UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KERA TURNER, *et al.*,

Plaintiffs,

v.

COUNTY OF WASHOE, *et al.*,

Defendants.

Case No. 3:23-cv-00407-ART-CSD

ORDER PARTIALLY GRANTING
MOTION TO DISMISS

*Pro se* Plaintiffs Kera and Joseph Turner bring this action against Defendants Washoe County and six employees of its Child Protective Services division alleging mistreatment during their child dependency proceedings and unjust retention of their property by the Washoe County Sheriff's Office.

Before the Court are Defendants' motion to dismiss (ECF No. 23), Plaintiffs' motion to seal their response to that motion (ECF No. 35), and Defendants' motion to strike Plaintiffs' sur-reply to that motion (ECF No. 39). For the reasons identified below, the Court grants in part and denies in part the motion to dismiss, grants the motion to seal, and denies the motion to strike.

## I.    BACKGROUND

In August 2021, the Dixie Fire pushed Kera and Joseph Turner out of their home in Milford, California. (ECF No. 6 at ¶ 20.) While the Turners were relocating, they left their minor children, E.M. (then 8 years old) and A.T. (then around 1 year old), in the care of the Manha family. (*Id.* at ¶¶ 21-22.)

On August 21, the Manhas told Washoe County Child Protective Services (CPS) that they suspected A.T. had been sexually abused. (*Id.* at ¶ 26.) At the direction of the Washoe County Health and Services Administration (WCHSA), the Manhas took A.T. to the hospital for a sexual abuse evaluation. (*Id.* at ¶ 27.) This was done without the Turners' knowledge or consent. (*Id.* at ¶ 28.) The results of these evaluations are unclear.

Soon after, the Turners were arrested for possession of two stolen vehicles: a Ford F-350 and a travel trailer. (*Id.* at ¶ 34.) Inside the vehicles were 70 guns and gun parts, over 29,000 rounds of ammunition, dozens of pistol and rifle magazines, tactical gear and other weapons, and several personal items. (*Id.*) Police seized those items, along with the vehicles. (*Id.*)

The Turners were eventually released from police custody, but they had trouble getting their property back. (*See id.* at ¶¶ 62-66.) It is unclear from the Amended Complaint whether all of the Turners' non-firearm-related property is now in their possession. (*Id.*) The Washoe County Sheriff's Office also informed the Turners that they would not return the Turners' weapons until the Turners completed background checks. (*Id.* at ¶ 72.) The Turners appear to have refused to comply with this condition, in part because the Sheriff's Office has not provided them with an inventory of the seized weapons. (*Id.*; *but see id.* at ¶ 34.)

After the Turners were arrested, dependency proceedings were initiated in the Second Judicial District Court in Washoe County (Juvenile Court) to determine the custody of E.M. and A.T. (*See* ECF Nos. 23-1, 23-2.) The Juvenile Court determined that continual placement in the Turners' home was "contrary to the welfare" of E.M. and A.T. and removed them from the Turners' custody. (ECF No. 23-1.)

The dependency proceedings were eventually moved to the Superior Court of California in Sacramento County, with regards to the care of E.M., and to the Superior Court of California in Lassen County, with regards to the care of A.T. (ECF Nos. 23-5; 23-6; 23-15; 23-16.) Those proceedings resulted in E.M. being placed in the custody of her biological father and with A.T. being returned to the Turners' care. (ECF Nos. 23-6; 36-1 at 18.)

The Turners allege that the above proceedings, and particularly the portion of those proceedings that occurred in Nevada, were rife with abuse. They allege that Defendants, Washoe County and employees of its Child Protective Services

division, failed to provide them with a fair process, (ECF No. 6 at ¶¶ 43, 46, 51, 93), filed false reports against them, (*id.* at ¶¶ 54-55, 59, 99, 126), failed to comply with their obligations to take "reasonable efforts" under Nevada law, (*id.* at ¶¶ 43, 77, 126), and retaliated against them, (*id.* at ¶¶ 47, 87-91). The Turners also allege that each of these actions was taken pursuant to Washoe County policy or custom or that it was the result of the County's failure to train its employees. (*Id.* at ¶¶ 122-26.)

The Turners filed a complaint with this Court on August 18, 2023, alleging claims under 42 U.S.C. § 1983 for: (1) Interference with Familial Relations under the First and Fourteenth Amendments; (2) Retaliation under the First Amendment; (3) Substantive and Procedural Due Process under the Fourteenth Amendment; (4) Wrongful Taking of a Minor Child under the Fourth Amendment; (5) Withholding Arms under the Second Amendment; (6) Wrongful Taking and Withholding of Private Property under the Fourth Amendment; and (7) a *Monell* Claim against Washoe County. (*Id.* at ¶¶ 73-126.) They bring these claims against Washoe County and against six employees of the County's Child Protective Services division, in their official capacities and as individuals. (*Id.* at ¶¶ 5-11.) Defendants now move to dismiss the Turners' Amended Complaint (ECF No. 6), on the grounds identified below.

## II.   LEGAL STANDARD

Many of Defendants' arguments challenge this Court's jurisdiction to hear Plaintiffs' case. A defendant may seek dismissal of a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The party asserting claims in federal court bears the burden of demonstrating the court's jurisdiction over those claims. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008). 12(b)(1) attacks on subject matter jurisdiction "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, "the challenger asserts that the allegations

contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): [a]ccepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In resolving a facial attack, a court may take judicial notice of matters of public record. *Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017).

Some of Defendants' arguments instead rely on Fed. R. Civ. P. 12(b)(6). A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). But even a facially plausible claim may be dismissed under Fed. R. Civ. P. 12(b)(6) for "lack of a cognizable legal theory." *Solida v. McKelvey*, 820 F.3d 1090, 1096 (9th Cir. 2016). Thus, to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) a claim must be both factually plausible and legally cognizable.

A *pro se* complaint is "to be liberally construed," and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam)

(citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (stating that "we continue to construe *pro se* filings liberally when evaluating them under *Iqbal*," and "particularly in civil rights cases, . . . to afford the [plaintiff] the benefit of any doubt") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

### III.   DISCUSSION

Plaintiffs' claims can be divided into two groups: claims in which Plaintiffs challenge aspects of their dependency proceedings (their "Dependency Claims") and claims in which they challenge the County's seizure of their property (their "Property Claims"). The Dependency Claims include Claim 1 (Interference with Familial Relations), Claim 2 (Unlawful Retaliation), Claim 3 (Violation of Due Process), Claim 4 (Wrongful Taking of a Minor Child), and Claim 7 (Plaintiffs' *Monell* claim). The Property Claims include Claim 5 (Violation of the Second Amendment), Claim 6 (Wrongful Taking and Withholding of Private Property), and Claim 7 (Plaintiffs' *Monell* claim).[1] The *Monell* claim is in both groups because it relates to both the dependency and property claims.

The Court addresses each set of claims in turn.

### A. DEPENDENCY CLAIMS

As a preliminary matter, the Court takes judicial notice of the state court documents attached as exhibits to Defendants' Motion to Dismiss and Plaintiffs' Response. (ECF Nos. 23, 34.) Those documents are matters of public record and their authenticity is not contested. *See Lee*, 250 F.3d at 689-90 ("A court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment.").

---

[1] Plaintiffs make a passing reference to property in their claim for violation of Due Process. (ECF No. 6 at ¶ 93.) The Court nevertheless treats that claim as challenging only the state court dependency proceedings because the reference to any property-related Due Process violation is both cursory and conclusory, and Plaintiffs have not alleged facts sufficient to warrant a broader reading of that claim.

The majority of Plaintiffs' dependency claims are barred by the *Rooker-Feldman* doctrine, which provides that federal district courts lack subject matter jurisdiction to hear *de facto* appeals of state court decisions. *Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010); *see also District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). A suit is a "*de facto* appeal" when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Carmona,* 603 F.3d at 1050 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)); *see Doe v. Mann,* 415 F.3d 1038, 1041 (9th Cir. 2005) ("[T]he Rooker–Feldman doctrine bars federal courts from exercising subject-matter jurisdiction over a proceeding in 'which a party losing in state court' seeks 'what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'") (quoting *Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994), *cert. denied,* 547 U.S. 1111 (2006)). The *Rooker–Feldman* doctrine applies to final state court orders and judgments as well as interlocutory orders and non-final judgments. *Doe & Assoc. Law Offices v. Napolitano,* 252 F.3d 1026, 1030 (9th Cir. 2001); *Worldwide Church of God v. McNair,* 805 F.2d 888, 893 n.3 (9th Cir. 1986).

A party need not style its claim as an appeal of a state court decision for *Rooker-Feldman* to apply. *Rooker-Feldman* can apply, for example, to federal constitutional claims that were not raised in underlying state court proceedings. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 n.4 (9th Cir. 2003) ("[i]t is immaterial that Bianchi frames his federal complaint as a constitutional challenge to the state court's decisions, rather than as a direct appeal of those decisions"); *id.* at 901 ("the *Rooker-Feldman* doctrine is not limited to claims that were actually decided by state courts, but rather it precludes review of all 'state court decisions in particular cases arising out of judicial proceedings even if those challenges

allege that the state court's action was unconstitutional'"); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) ("*Rooker-Feldman* may . . . apply where the parties do not directly contest the merits of a state court decision"). Relatedly, *Rooker-Feldman* can apply to claims for purely monetary relief, even though such relief would not directly overturn any prior state court decision. *Sample v. Monterey Cnty. Family & Children Servs.*, No. C09-01005 HRL, 2009 WL 2485748, at *3 (N.D. Cal. 2009) (holding plaintiff's claims for money damages were barred under *Rooker-Feldman* because, "she would only receive a damage award if this court determined that the Dependency Court's decisions pertaining to the custody of her children—including any review or authorization of defendants' actions—were in error"); *Grimes v. Alameda County Social Servs.*, No. C 11-02977 WHA, 2011 WL 4948879, at *3 (N.D. Cal. Oct. 18, 2011) ("Even if plaintiff were to abandon his request for the return of his children and instead pursue only money damages, his claims still would require review of the relevant state-court decisions. Such review is barred.").

Plaintiffs' Dependency Claims make four categorical challenges to Defendants' actions. Three of those challenges are entirely barred by the *Rooker-Feldman* doctrine. The fourth is not barred and may proceed within the limited scope described below.

### 1. Due Process Violations

First, Plaintiffs allege that the challenged dependency proceedings infringed on their due process rights. These allegations touch on Claims 1, 3, and 7. (ECF No. 6 at ¶¶ 81, 92-96, 125.) They specifically include statements that Defendants "refused to conduct a competent, fair, and objective investigation," (*id.* at ¶ 93), that they "failed to follow standard . . . procedures to determine the facts," (*id.* at ¶ 43), that the Sacramento Family Court failed to notify Plaintiffs of

an upcoming hearing (*id.* at ¶ 46),[2] and that the Juvenile Dependency Court tended to give legally illegitimate justifications for its biased positions, (*id.* at ¶ 51). Though Plaintiffs allege these "unfairness" issues across multiple claims, the Court interprets each of them as arising under a single claim for violation of Plaintiffs' 14th Amendment due process rights.

Plaintiffs' due process claim is a *de facto* appeal of several state court decisions and is therefore barred under *Rooker-Feldman*. To find in Plaintiffs' favor on this § 1983 claim, the Court would have to conclude that Plaintiffs' state court proceedings were constitutionally unsound and therefore voidable. *Rooker-Feldman* bars such a conclusion. *See Bianchi*, 334 F.3d at 900 (holding that plaintiff's due process claim was barred under *Rooker-Feldman*, regardless of whether the state court had adjudicated it, because it effectively asked the Ninth Circuit to "undo" the state court's decision); *Allah v. Superior Court of State of Cal., Los Angeles Cnty.*, 871 F.2d 887, 890-91 (9th Cir. 1989) (holding that *Rooker-Feldman* applies to claims that a state court failed to protect a litigant's procedural due process rights), *superseded on other grounds by* Fed. R. App. P. 4, *as recognized in Harmston v. City & Cnty. of S.F.*, 627 F.3d 1273, 1279-80 (9th Cir. 2010).

Plaintiffs argue that *Rooker-Feldman* is inapplicable to their claims because they do not seek to change the outcome of their dependency proceedings and because they seek only monetary damages for violation of their rights. This argument fails for at least two reasons. First, as discussed above, claims for money damages can constitute *de facto* appeals of state court decisions under *Rooker-Feldman. See, e.g., Sample*, 2009 WL 2485748, at *3 (holding plaintiff's claims for money damages were barred under *Rooker-Feldman* because, "she would only receive a damage award if this court determined that the Dependency

---

[2] Plaintiffs do not name the Sacramento Family Court or its employees as defendants.

Court's decisions pertaining to the custody of her children—including any review or authorization of defendants' actions—were in error"). Second, while Plaintiffs do not contest the final decision to reunite them with one of their children, they *do* contest several prior decisions by the Nevada dependency court. For example, Plaintiffs complain that the Juvenile Dependency Court based its decisions on facts gathered through a fundamentally unfair investigation. (*See* ECF No. 6 at ¶ 93.) *Rooker-Feldman* bars federal review of such interlocutory decisions. *See Doe & Assoc.,* 252 F.3d at 1030 (holding that *Rooker-Feldman* applies to interlocutory orders and non-final judgments).

Plaintiffs' claims challenging the fairness of the state court dependency proceedings are dismissed. Because any amendment to those claims would be futile, the dismissal is with prejudice. Plaintiffs may not reallege their procedural due process claims in any amended complaint.

### 2. False Accusations

Second, Plaintiffs allege that their rights were violated when Defendants made false accusations against them, leading to adverse decisions in their dependency proceedings. These allegations touch on claims 1, 3, 4, and 7. (ECF No. 6 at ¶¶ 75, 94, 99, 126.) They specifically include allegations that Washoe County filed multiple false reports against Plaintiffs in court, (*id.* at ¶¶ 54-55, 59), that Washoe County encouraged individual Defendants to do the same, (*id.* at ¶126), and that these claims were the basis for Plaintiffs' loss of custody over their children, (*id.* at ¶ 99).

To the extent that Plaintiffs' claims rely on allegations of false accusations made during dependency proceedings, those claims are inextricably intertwined with a state court decision and therefore barred under *Rooker-Feldman*. In addition to barring *de facto* appeals, *Rooker-Feldman* bars claims that are "inextricably intertwined" with an issue resolved by a state court in its judicial decision. *Doe*, 415 F.3d at 1043 (citing *Noel*, 341 F.3d at 1158); *see also*, *Exxon*,

544 U.S. at 286 n.1 (stating that "a district court [cannot] entertain constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional attack [is] 'inextricably intertwined' with the state court's judgment") (citing *Feldman*, 460 U.S. at 482 n.16). "Claims raised in the federal court action are 'inextricably intertwined' with the state court's decision [when] the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi*, 334 F.3d at 898 (citing *Feldman*, 460 U.S. at 483 n.16, 485).

Here, Plaintiffs allege that Defendants submitted false evidence and reports to the dependency courts related to Plaintiffs' drug abuse and their abuse and neglect of their minor children. (ECF No. 6 at ¶¶ 54-55, 59.) Plaintiffs further allege that those reports "directly and proximately caused" their children to be removed from their custody. (*Id.*) They submit publicly-available court documents demonstrating that the Nevada dependency court relied on Defendants' allegedly false accusations in reaching its custody decision. (*See* ECF No. 23-3 (alleging neglect and possession of drug paraphernalia by Plaintiffs); ECF Nos. 23-12, 23-13 (relying on those accusations in concluding that fictive kin placement was appropriate).) All claims based on the above-mentioned allegations are barred under *Rooker-Feldman*.

Other district courts faced with this issue have reached similar conclusions. *Ismail v. Cnty. of Orange*, No. SACV 10-00901 VBF (AJW), 2012 WL 3644170, at *16 (C.D. Cal. 2012) (holding that defendants' "allegedly false, inaccurate, malicious, or biased recommendations, reports, and testimony" presented to a juvenile court were inextricably intertwined with the orders and judgments of that court), *aff'd*, 693 Fed. Appx. 507, 512 (9th Cir. 2017); *Meza v. Meza*, No. SA CV 12-01777-GAF (VBK), 2013 WL 2338126, at *10 (C.D. Cal. 2013) ("the *Rooker-Feldman* doctrine bars this Court from hearing Plaintiff's claims

against the individual Defendants that they conspired and made false representations to the Juvenile Court because they are 'inextricably intertwined' with the orders of the Juvenile Court regarding matters adjudicated in the dependency case"); *Zayas v. Messit*, Case No. C20-0747-JCC, 2021 WL 3675033, at *5 (W.D. Wash. 2021) (barring adjudication of plaintiff's claims that defendants approved false documents under oath at her dependency trial because those allegations "raise[d] issues that [were] 'inextricably intertwined' with the state court's dependency order"); *Ragan v. Cnty. of Humboldt Dep't of Health and Hum. Servs.*, Case No. 16-cv-05580-RS, 2017 WL 878083, at *4 (N.D. Cal. 2017) (dismissing plaintiffs' claims that defendants "presented fabricated evidence to the [state] court and refused to provide exculpatory evidence throughout the dependency proceedings" because those claims "raise[d] issues that [were] 'inextricably intertwined' with the juvenile dependency proceedings").

Plaintiffs argue that their "false accusation" claims are admissible under *Rooker-Feldman*'s extrinsic fraud exception. Under that exception, courts retain subject matter jurisdiction over cases where a plaintiff alleges extrinsic fraud by an adverse party and "seeks to set aside a state court judgment obtained by that fraud." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).[3] The extrinsic fraud exception applies only where the federal plaintiff was barred from challenging the allegedly fraudulent claims in the underlying state court proceeding. *Ragan*, 2017 WL 878083, at *4 (holding that the extrinsic fraud exception did not apply to plaintiffs' claims where they "[did] not allege that Defendants committed any fraud that they were prevented from challenging in

---

[3] This exception stems from the fact that *Rooker-Feldman* is relatively limited in scope. *Rooker-Feldman* applies only to cases where "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision *by a state court*, and seeks relief from a state court judgment based on that decision." *Noel*, 341 F.3d at 1164 (emphasis added). "A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1140-41 (citing *Noel*, 341 F.3d at 1164). Since that plaintiff alleges no error by the state court, *Rooker-Feldman* does not operate to bar her claims. *Id.*

the [state] proceedings"); *see also Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) ("Extrinsic fraud is conduct which prevents a party from presenting his claim in court."); *Kougasian*, 395 F.3d at 1139 (holding that allegations of extrinsic fraud require "the investigation of a new case arising upon new facts").

None of Defendants' alleged false accusations fall within the extrinsic fraud exception because Plaintiffs do not allege they were barred from challenging those accusations in the dependency proceedings.

Plaintiffs "false accusations" claims are therefore dismissed, to the extent that those claims challenge false statements or misrepresentations made during dependency proceedings. Plaintiffs may reallege a claim based on Defendants' false accusations, in an amended complaint, if they can show either (1) those false accusations were not made during the dependency proceedings or (2) Plaintiffs were barred from challenging those false accusations during the dependency proceedings.

### 3. Lack of "Reasonable Effort"

Third, Plaintiffs base their claims on a lack of "reasonable effort" by Defendants to reunify them with their child. These allegations touch on claims 1 and 7. (ECF No. 6 at ¶¶ 77, 123, 126.) They specifically include statements that Defendants failed to consider or "implement" reasonable efforts standards imposed on them by state and federal law, (*id.* at ¶ 77), that they ignored Plaintiffs' requests to place their children with Plaintiffs' family members, (*id.* at ¶ 126), and that they "failed to follow standard and normal procedures to . . . make efforts to keep the family together," (*id.* at ¶ 43).

Employees of child welfare agencies in Nevada are obligated to undertake "reasonable efforts" to reunify children with their parents. NRS 432B.393. To enforce this obligation, Nevada dependency courts must affirmatively determine, within 60 days of separation, that the child welfare agency either complied with its "reasonable efforts" obligations or that no such efforts were required. NRS

432B.550(8)(a); *see also Washoe Cnty. Hum. Servs. Agency v. Second Judicial Dist. Court in and for Cnty. of Washoe*, 521 P.3d 1199, 1204 (Nev. 2022) ("issues regarding a child welfare agency's duty to provide reasonable efforts to reunify children with their parents are relevant to a variety of child welfare cases that . . . will likely continue to come before this court").

Since the Nevada dependency court was required to make a determination on the "reasonable efforts" issue, Plaintiffs' claims alleging lack of reasonable effort, like their claims alleging false statements, are inextricably intertwined with state court decisions and barred under *Rooker-Feldman.* The Court dismisses these claims, with prejudice.[4]

### 4. Retaliation

Fourth, some of Plaintiffs' Dependency Claims rely on assertions that Defendants retaliated against Plaintiffs because Plaintiffs chose to exercise their constitutionally protected rights. These allegations touch on claims 1, 2, 4, and 7. (ECF No. 6 at ¶¶ 86, 88-89, 103, 123.)

To state a claim for retaliation, a plaintiff must allege (1) the plaintiff exercised a constitutionally protected right; (2) the exercise of that right was a "substantial" or "motivating" factor in the defendant's retaliatory action; and (3) the plaintiff experienced an injury stemming from that action. *Ragan* 2017 WL 878083, at *6 (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).

The Amended Complaint makes only one non-conclusory allegation of retaliation: that Defendant Ashley Davis forced Kera Turner to restart drug screening in response to Turner's request to speak with a lawyer and refusal to sign an unlimited release of medical information. (*Id.* at ¶ 47.)

As alleged, Plaintiffs' retaliation claim against Ms. Davis is not barred under

---

[4] "Reasonable efforts" requirements are not enforceable by private individuals through § 1983 actions. *Suter v. Artist M.*, 503 U.S. 347, 363-64 (1992). This fact provides an alternate basis for the Court's dismissal of this set of claims.

*Rooker-Feldman*. Here, Plaintiffs complain of an action by an individual—Ms. Davis—not a state court. *See Kougasian*, 359 F.3d at 1140-41. Nor is there any indication that this issue was previously raised in state court or that its adjudication would "undercut [a] state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi*, 334 F.3d at 898 (citing *Feldman*, 460 U.S. at 483 n.16, 485).

Defendants make several non-persuasive arguments as to why the Court should dismiss this claim, *Rooker-Feldman* notwithstanding. First, Defendants argue that issue preclusion bars this claim. Issue preclusion does not apply here because there is no indication in the documents before the Court that the factual issues underlying this claim have already been adjudicated. *See Kahn v. Morse & Mowbray*, 117 P.3d 227, 234-35 (Nev. 2005).

Defendants also argue that this claim should be dismissed as a "categorical reference" to one or more unnamed defendants. (*See* ECF No. 23 at 16-17.) That argument is inapplicable because this claim is plainly brought against Ashley Davis, who is a named defendant in this case.

Defendants argue that Ms. Davis and her co-defendants are entitled to absolute immunity. The Court refrains from ruling on that question because it is not yet clear whether absolute immunity applies to Ms. Davis's actions. "[S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). Immunity extends to claims that a social worker initiated or pursued dependency proceedings maliciously. *Cf. Imbler v. Pacthman*, 424 U.S. 409, 427 (1976) (holding that prosecutors enjoy absolute immunity from § 1983 claims for malicious prosecution). It does not extend to "investigatory" conduct, such as the collection of evidence prior to trial, *Beltran v. Santa Clara County*, 514 F.3d 906, 908-09 (9th Cir. 2008); *al-Kidd v. Ashcroft*, 580 F.3d 949, 958 (9th

Cir. 2009), *rev'd on other grounds*, 563 U.S. 731 (2011). It is unclear from the Amended Complaint what role the medical release form and drug testing played in the dependency proceedings. It is therefore unclear whether Ms. Davis's actions related to the medical release and drug testing can properly be described as "quasi-prosecutorial" or merely investigatory. *See Miller v. Gammie*, 335 F.3d 889, 897-98 (9th Cir. 2003) (upholding the district court's decision to postpone resolving the issue of absolute immunity because it was not yet clear whether the defendants' functions were quasi-prosecutorial).[5]

Finally, Defendants argue that, to the extent Plaintiffs bring claims against Defendants in their official capacities, those claims should be dismissed as redundant. The Court agrees. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). Washoe County is already a named Defendant in this case, and every other Defendant is an employee of Washoe County. So any suit against the other Defendants in their official capacities is redundant. The Court dismisses all remaining claims against the individual named Defendants, to the extent they are brought against Defendants in their official capacities. Plaintiffs can still bring a claim against Ashley Davis, the last remaining human Defendant, as an individual.

Plaintiffs retaliation claim may move forward, as it relates to Ms. Davis's reinstatement of Kera Turner's drug testing requirements. It is dismissed as to all other issues.

//

---

[5] The Court will not yet address the question of qualified immunity, which typically applies to the actions of social workers in the absence of absolute immunity, because Defendants have not raised that issue. *See Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993) ("Qualified immunity is an affirmative defense that should be pled by the defendant.").

### 5. *Monell* Claims

Finally, Plaintiffs' dependency-related *Monell* claims are dismissed for failure to state a claim.

A municipality may be liable under § 1983 when the enforcement of a municipal policy or custom was the moving force behind the violation of a constitutionally protected right. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978). Generally, "the actions of individual employees can support liability against a municipality under § 1983 only if those employees were acting pursuant to an official municipal policy." *Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *4 (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)). Even if there is no "official" policy, a plaintiff can allege liability based on employees' actions under two alternative theories: (1) "if an employee commits a constitutional violation pursuant to a long-standing practice or custom"; or (2) if "the person causing the violation has final policymaking authority." *Id.* (internal citations omitted). Examples of a "custom" include "inaction or omission, such as a failure to train, if the failure to train amounts to deliberate indifference of plaintiff's rights." *Id.*

Only one of Plaintiffs' dependency claims has survived Defendants' motion to dismiss. That claim alleges that Ms. Davis violated Ms. Turner's constitutional rights by retaliating against her. To support a *Monell* claim related to Ms. Davis's actions, Plaintiffs must allege more than "a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Here, Plaintiffs allege, broadly, that Ms. Davis and her co-defendants acted pursuant to Washoe County policy or custom, or that the County failed to properly train them. (ECF No. 6 at ¶¶ 47, 122-26.) Plaintiffs make no allegations as to the contents of that policy or training, a particular training deficiency, or specific actors with influence over the policy. This is insufficient to state a *Monell* claim.

Plaintiffs may reassert their *Monell* claim in an amended complaint, if they can allege specific facts related the County policy or training regimen that undergirded Ms. Davis's alleged retaliatory behavior.

### 6. New Fourth and Fourteenth Amendment Claims

Plaintiffs have filed a sur-reply requesting leave to allege a new claim for violation of their Fourth and Fourteenth Amendment rights related to the warrantless sexual abuse evaluation of A.T. (ECF No. 38 at 2-6.)

Sur-replies are not allowed in this district without leave of the Court, and Defendants have asked the Court to strike Plaintiffs' sur-reply on those grounds. (ECF No. 39 (citing LR II 7-2(d)).)

The local and federal rules related to the filing of briefings and the striking of documents are permissive. A Court has significant control over its own docket. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (citing *Atchison, Topeka & Santa Fe Ry. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998)). It *may* permit sur-replies and it *may* strike certain imprudently filed documents. *See* LR II 7-2(d); LR IA 10-1(d); Fed. R. Civ. P. 12(f); *Roadhouse v. Las Vegas Metropolitan Police Dept.*, 290 F.R.D. 535, 543 (D. Nev. 2013) ("Whether to grant a motion to strike lies within the sound discretion of the district court.")

Because Plaintiffs have already given notice of their concern over A.T.'s sexual abuse evaluation, (ECF No. 6 at ¶¶ 25-28), and because Defendants have failed to show they would be prejudiced by the inclusion of this issue as an affirmative cause of action, the Court denies Defendants' motion to strike and grants Plaintiffs leave to amend their complaint to include this new claim.

In conclusion, with regard to Plaintiffs' dependency claims (Claims 1, 2, 3, 4, and part of Claim 7) only one claim survives Defendants' motion to dismiss: a First Amendment Claim, brought under 42 U.S.C. § 1983, alleging that Defendant Ashley Davis, in her individual capacity, retaliated against Plaintiff Kera Truner by forcing her to restart regular drug testing. Plaintiffs may file a

Second Amended Complaint alleging that claim as well as a claim for violation of their Fourth and Fourteenth Amendment rights, related to the warrantless sexual abuse evaluation of their minor child. If Plaintiffs are able to cure the issues identified in this order, they may also reallege a claim based on Defendants' "false accusations" and a *Monell* claim.

## B. PROPERTY CLAIMS

Plaintiffs' Property Claims relate to Washoe County's seizure and retention of their property during their arrest for possession of stolen vehicles. For both claims, Plaintiffs have failed to state a claim upon which relief can be granted.

### 1. Second Amendment Claim

Plaintiffs allege that their Second Amendment Rights were violated when Washoe County seized their firearms and ammunition during a lawful arrest and when the County required them to undergo background checks to regain possession of their firearms. The Second Amendment does not protect Plaintiffs against either of these alleged harms.

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, courts must perform a two-step analysis to determine whether the government has infringed on a plaintiff's Second Amendment rights. 597 U.S. 1 (2022). First, courts must consider "whether the Second Amendment's plain text covers an individual's proposed course of conduct." *United States v. Perez-Garzia*, 96 F.4th 1166, 1178 (citing *Bruen*, 597 U.S. at 24). If a court concludes that it does, "[t]he Government . . . bears the burden of justifying the challenged [behavior] by showing that it is consistent with our nation's 'historical tradition of firearm regulation.'" *Id.* (citation omitted). Both of Plaintiffs' challenges fail at *Bruen* step one.

First, Plaintiffs fail to state a claim related to the County's initial seizure of their guns. The text of the Second Amendment protects a person's "right to bear arms," generally; it does not guarantee the right to possess any one gun or any particular set of guns. *Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 217

(S.D.N.Y. 2005), *aff'd*, 232 F. App'x 74 (2d Cir. 2007); *see also Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011) (holding the Second Amendment was not implicated where law enforcement seized plaintiff's firearm but did not limit his ability to obtain other firearms); *Marutyan v. Las Vegas Metro. Police Dep't*, 2:16-cv-01089-MMD-GWF, 2017 WL 1091787, at *3 (D. Nev. 2017) (same), *aff'd*, 778 Fed. Appx. 489 (9th Cir. 2019); *McGuire v. Village of Tarrytown*, No. 8 CIV.2049 (KTD), 2011 WL 2623466, at *7 (S.D.N.Y 2011) (same); *Vaher v. Town of Orangetown, N.Y.*, 916 F. Supp. 2d 404, 429-30 (S.D.N.Y. 2013) (same).

Plaintiffs do not allege that the County has limited their ability to obtain other guns. They allege only that law enforcement unfairly seized and retained their specific guns when they were arrested for possession of stolen vehicles. Because Plaintiffs fail to allege an infringement on their rights under the Second Amendment, their Second Amendment claim is dismissed, as it relates to the County's initial seizure. Because amendment on this point would be futile, this portion of Plaintiffs' Second Amendment claims is dismissed with prejudice.

Next, Plaintiffs fail to state a claim related to the County's background check requirement. The Supreme Court has never held background checks on the sale or transfer of firearms to be per se unconstitutional. *See Bruen*, 597 U.S. at 38 n.9 ("nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes . . . . which often require applicants to undergo a background check . . . ."); *Heller*, 554 U.S. at 626-27 ("nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms"). Plaintiffs have made next to no allegations as to the specifics of the County's background check program. On the facts alleged, the Court has no reason to believe that the program infringes on Plaintiffs' Second Amendment rights. Plaintiffs may reallege this portion of their complaint, if they believe they can reasonably allege specific aspects of the County's background check regime that

1   might render it unconstitutional.

2   ### 2. Property Seizure Claim

3   Plaintiffs allege their Fourth Amendment rights were violated when the
4   County seized their personal property. Again, Plaintiffs fail to state a claim upon
5   which relief can be granted.

6   The Fourth Amendment protects individuals "against unreasonable
7   searches and seizures." U.S. Const. Amend. IV. Whether the Fourth Amendment
8   was violated turns on whether the seizure was reasonable. *Graham v. Connor*,
9   490 U.S. 386, 396 (1986). "The Fourth Amendment does not protect a [person]
10  from a warrantless search [or seizure] of property that [they] stole." *United States*
11  *v. Caymen*, 404 F.3d 1196, 1200 (9th Cir. 2005). Law enforcement may seize
12  property where there is a reasonable, articulable suspicion that the property is
13  or contains evidence of a crime. *See United States v. Place*, 462 U.S. 696, 706
14  (1983).

15  Here, Plaintiffs allege that police seized their property when enacting an
16  otherwise lawful arrest for possession of stolen vehicles. (ECF No. 6 at ¶¶110–
17  20.) They concede that the vehicles in question were stolen and that the property
18  in question was located in those vehicles at the time of arrest. (*See id.* at ¶¶ 23,
19  31, 33-34.) They do not challenge the lawfulness of the arrest itself.

20  Plaintiffs' allegations indicate that the seizure of their property was
21  reasonable because law enforcement officials had a reasonable articulable
22  suspicion that both the vehicles and the property contained in the vehicles were
23  stolen. *See Lewis v. City of Culver City*, 2:17-CV-07635-ODW-SS, 2018 WL
24  1406609, at *3 (C.D. Cal. 2018) ("the Fourth Amendment certainly does not
25  require Defendants to turn over stolen property to anyone without first verifying
26  that the person requesting the property is the rightful owner"). Therefore,
27  Plaintiffs have failed to state a claim for violation of their Fourth Amendment
28  rights.

Because Plaintiffs fail to allege a constitutional violation related to their property claims, their property-related *Monell* claim also fails. *Monell,* 436 U.S. at 690.

## C. MOTION TO SEAL

Plaintiffs have submitted an unopposed motion to file their response to Defendants' motion to dismiss under seal. (ECF No. 35.) The Court finds that the sensitive nature of Plaintiffs' child dependency proceedings provides a compelling reason to grant Plaintiffs motion, which is not outweighed by the public's interest in free access to information related to the judicial process. *See Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). The motion is granted.

## IV.    CONCLUSION

It is therefore ordered that Defendants' motion to dismiss (ECF No. 23) is granted in part and denied in part, in keeping with this order.

It is further ordered that Plaintiffs shall have until September 18, 2023 to file a Second Amended Complaint that is consistent with this order.

It is further ordered that Plaintiffs' motion to seal (ECF No. 35) is granted.

It is further ordered that Defendants' motion to strike (ECF No. 39) is denied.

Dated this 19th day of August 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE